Okay. We should have two on there. Okay, so we'll first go with Mr. Koontz. Can you hear me? Yes, Your Honor. Welcome back. Thank you so much. It's always an honor and privilege. And Mr. Moskowitz. Good morning, Your Honor. Great. Okay, we have you both. The case is TP Racing v. American Home Assurance Co. Mr. Koontz, you may proceed when you are ready. Thank you, Your Honor. I'm Mark Koontz, appearing on behalf of the appellant, TP Racing, and I would like to reserve five minutes on rebuttal to my esteemed colleague, Mr. Moskowitz. And since this case is extensively briefed, I would like to focus on some key issues and may it please the court that the main issue, the main emphasis we like to put on is that our client was deprived of his right to have a jury determine the facts that are underlying this case. And we will ask you to reverse and remand with instruction for this seven-amendment violation that we see here. And the main focus I like to put on there, first of all, is the pleading itself, because as we in the brief stated, we totally think it's proper and it was properly pleaded according to Rule 8, because the main issues that were necessary that property was damaged by the COVID virus reflects in the pleading. It's not enough, counsel, that property be damaged by the COVID virus. The relevant provisions here all have some kind of a causal requirement that there be, for example, an interruption of your business operations as a result of direct physical loss or damage. Even if there was COVID in the property, that wasn't the reason for the loss. The reason for the loss is the shutdown orders. And there's a lot of authority that makes precisely this point. I understand it's in other jurisdictions, but why shouldn't we conclude that Arizona would follow that authority and conclude that the causation is missing because it's due to the shutdown orders? Yeah, first of all, thank you for your question. I think, yeah, the case law, as it is from different jurisdictions and is factually distinct, I think this fact alone needs to be that we focus to the fact of this particular occurrences that we have here. The shutdown order, I think, is just one thing that is not related to the case. Because what we say here is that because an organic virus affected organic property may change to it. This is the causation because it was unusable. That at the same time, some government restrictions as health provisions were in place does not reflect on the property damage by itself. Counselor, have you pled them that had Arizona not issued a shutdown order, that you could still not have remained open because of the damage from the virus? As far as I went through the pleading, if it's not expressly at least implied that the damage to all the details given in the pleading should resolve in that reasoning. So you're telling us that the racetrack would not have opened because the owners of the racetrack would have said, well, we have virus that's attached itself to racetrack property and we couldn't possibly endanger our patrons, and so we're going to have to close for that reason. Yes, Your Honor. That is one of the reasoning we pled. And if it's like I said, Can you point me to where in the complaint that theory is stated? Unfortunately, Your Honor, since I got it in front of me and the volume of it, and yeah, our reading is that it is if it's not expressed, implied in the whole record, that would reflect out of it. So to continue, if you don't have further questions, just one idea that came to my mind when you think about it, because it's always reflecting even in the reply brief that the property damage was not visible. Your Honor, if you put some plutonium on a table, even if you don't see it, it glows in the dark, there is a change by the virus. And it's not just to one surface. It could be anything that is in the premises. And I think this case, just in regard of the property, it's not just like it mentioned from the opposing side that it is about the loss of use. It's an actual damage that occurred. And according to Iqbal and Twombly, it is plausible. And we just want to emphasize the standard that is necessary in this stage of the case that is necessary to plead it properly. And according to Iqbal, with just the two prongs, that it's just feasible, that it was plausible, it doesn't mean it could occur, that it would occur, but it could. And that should be sufficient to give the opposing side proper notice in these stages. And the second one, because I want to keep it brief here, is just to focus on the fact determination by the court. Because the property damage that occurred needed to be determined as a matter of fact. And this case, when we go to the Seventh Amendment right of a jury trial, based on the 1791 standard, that it should have gone to a jury, Your Honor, because it is a novel issue with the coronavirus by itself. That is, an evolving research would have required it to get it to a fact finder. Because neither the judge nor the attorneys on this side could determine the actual change, the details of the property. But just the fact that a property was present, that COVID was present at the place of business, that it should have been sufficient to give it to the fact finder to determine. The outcome does not reflect at that point of the actual trial. It's about who determines the fact. And the Seventh Amendment is clear that the fact always should stay with the court. Not with the court, but the court should relay these fact-finding issues to the jury. Can you address the virus exclusion? The virus exclusion, good that you mentioned that, Your Honor, because that was the point I wanted to reflect at last here. Besides the case law, because applicable, it is not because out of jurisdiction. And like I mentioned, that is not factual distinct. But the contamination clause in the policy and through our reading, and as we looked at it, seems to be very vague. Especially because it leaves, I mean, an emphasis on the origin. It cites, for example, the release of the virus. And these things, if it came external or internal, it is so vague that, I mean, even the court did not rule on that matter. It went primarily to the property because I think even the court implied, thought that this issue needs to be determined at a trial. Because even the fact-finder, if the ordinary meaning of the words like contamination, virus, I mean, all these things needed more facts behind it. Therefore, we think the contamination clause itself in this stage is so vague that it needed to be put in front of a fact-finder. And the last thing I want to emphasize and reflect upon is it mentioned throughout the brief that shielding and precautionary steps were taken at the premises. In this case, I really think these things are distinct to the government's security provisions to prevent humans from being infected and stay healthy. Because as you think, for example, like water damage, some mitigation is necessary from the owner to prevent more property damage. Since the movement of the virus and the change to different surfaces is not really and was at that time not even determined, it was just a precautionary step that was taken. So I think this basically reflects on all the basic issues. Everything else is in the brief. So I would love to rest my case until my esteemed colleague is finished with his remarks so I can rebut on this. But the last thing I want to say, it's again about the basic right, the fact-finder, to determine the fact. And by the standard, by the Seventh Amendment, that would have been necessary. The outcome of the case by itself is not at issue currently, but based on the right pleading that occurred here, by the standards that apply, I think the court should have decided differently. And we ask you later on, again, to reverse and remand. And thank you for your attention. If you don't have questions, I would like to listen to my colleague and eventually comment on that. Thank you so much. We'll reserve the remainder of your time. Thank you, Your Honor. Good morning. May it please the court, Keith Boswitz on behalf of the Appellant American Home. There are three separate and independent reasons this court should affirm the district court's opinion. Because I am covering ground that is now so well-tread in this COVID litigation. As a California appellate court recently explained, there is a literal wall of precedent that confronts, in this case, the appellant and supports the affirmation of the district court's decision. I'm going to focus on a few points that came out of the appellant's presentation based on questions from the bench, and then I'll circle back to make my last point. Let me start with the causation point that was raised. Having gone through the complaint paragraph by paragraph, I would submit to the court that there is no allegation of a causation other than that the government orders caused the closures and limitations of the appellant's business. Indeed, the only allegations of the complaint that arguably even rise to the level of surviving, if all promptly, are those very allegations. So, I would direct the court to record citation 1142 through 1148. That is the first amended complaint starting in paragraph 75. What about paragraph 97 on 1150, where they say that even after they were allowed to have a limited reopening, they actually had to close for two days because of jockeys, valets, and other staff members having COVID? I'm glad to address that, and I'm glad the court raised it. So, what we have there is an allegation that individuals got sick and were on the premises. There is no allegation related to the damage to property in that paragraph. And indeed, this court, in September, in the Out West Restaurant Group case, addressed effectively that exact scenario. So, in Out West, this court held, quote, to the extent that the insured's theory of physical loss is based upon the presence of infected employees or patrons on its property standing alone, that does not entail a, quote, physical alteration of property, close quote. And therefore, it does not qualify as direct physical damage or loss. There's a further sentence that says these positive cases are believed to have originated in the jockeys' quarters. Does that distinguish Out West? Respectfully, it does not, because Out West, the point of Out West and what it's getting at is that you don't have a physical alteration or damage to property. And so, if the court then considers its decision in Mudpipe, which talked about what is necessary, this physical alteration requirement, or in the case of a physical loss, permanent dispossession, and then looks at the cases from multiple other circuit courts of appeals, state supreme court, and state appellate courts that carefully look at these allegations, they find that this type of theory does not support a proper pleading factually, a plausible pleading of direct physical loss or damage. So, here, the fundamental point is that none of these facts plead a physical alteration or damage to property, as this court captured, for example, in its decision in Circus Circus, where it said that these allegations of the physical presence of virus on the property does not constitute physical loss or damage, and indeed would impermissibly collapse the coverage for direct physical loss into loss of use coverage, which is precisely what would occur here if that particular allegation were accepted as a plausible factual allegation of direct physical loss or damage. So, when the court considers these allegations, you can see, starting in paragraph 75, that the cause of the loss is here, with the exception of paragraph 97 that we just dealt with, are directly tied by the pleading itself to the government orders, and for the reasons expressed by the California Court of Appeal in the Innsby C case cannot survive here a motion to dismiss, because the causal element is not pled, and you can't infer anything else in the pleading to the contrary. I'll turn next to the virus... Does the causal theory of Innsby C apply to all of the relevant provisions here? Does the civil and military authority provision have a similar causation requirement that would also be covered by Innsby C? Correct. Each of the different coverages under which the plaintiff seeks insurance require that there first be a direct physical loss or damage to property. That's the initial predicate that has to be established, and then if that is established, then that direct physical loss or damage has to cause some form of interruption, whether it's a business interruption or extra expense, for example, or in the case of civil authority, a good example would be if I operate a business down the street from another business that sustains a fire, so I have a direct physical loss or damage to property. A government authority comes in and in connection with responding to the fire, shuts down traffic in a way that prevents my patrons from coming to my business. That would be a direct physical loss or damage that, through the civil authority order, ultimately causes an interruption to my business. So it's a direct physical loss or damage to the neighboring property in that case? Correct. Correct. Right. The civil authority coverage is the one that's distinguishable from the others insofar as which specific property has to sustain the direct physical loss or damage, but each of the coverages does require, as a threshold matter, that the direct physical loss or damage be established, and then that that direct physical loss or damage is the reason for the business interruption, which is not the case with the government orders, as explained by the courts and ends and is found in various other cases. I turn next to the virus exclusion because the court asked questions of appellate's counsel about it, and I would submit here that the language of the virus exclusion is clear and unambiguous. What does it require? So even assuming that there's a showing of direct physical loss or damage, which we submit is not the case, even assuming that the causation element is pled with respect to direct physical loss or damage, causing an interruption of the appellant's business, we ultimately reach the virus exclusion. And what's the operative language? Well, there has to be a release or dispersal here, and that's precisely what the complaint says. It says that the virus, human beings, release or disperse the virus, and that gets onto property. That's the allegation. One question I have is whether the virus exclusion, I mean, you just said that even if we assume there's a direct physical loss or damage, the virus exclusion applies, which suggests that they're analytically independent arguments. But what about the additional language that says, however, this exclusion shall not apply to direct physical loss or damage to covered property from pollutants or contaminants. So doesn't that sort of require us to still address the direct physical loss or damage issue? Because if there is direct physical loss or damage, then the virus exclusion wouldn't apply? I think that exception, and I'll have to put my hands out at your honor, goes to a specific carve-out of a circumstance not applicable here in this case. So we're looking at, and I'm at record citation 1203. We're dealing with a direct physical loss to covered property from pollutants and contaminants caused by a covered cause of loss, and then it goes on here. So in this instance, since we don't have a direct physical loss or damage, we never reach that exception to the exclusion. Well, that's, but then that would be a concession that the virus exclusion isn't really independent of the direct physical loss or damage argument. So we have to decide the direct physical loss or damage issue. Well, I think that's a fair point, your honor. And I think here, given the fact that we don't have direct physical loss or damage, of course, we don't reach it. But fundamentally, the virus, and that's why the virus exclusion doesn't have to be reached. And so the appellate's counsel suggested that the district court had an issue with the virus exclusion. Of course, there's nothing in the district court's opinion that says anything to that effect. The district court simply found that it did not need to reach the exclusion, which, of course, is ultimately the correct result here, because you don't have a direct physical loss or damage. And even if you did, it didn't cause the alleged business interruption. And again, I would simply submit, however, if you ultimately reached the virus exclusion, there's no ambiguity in the language related to the dispersal or release here. That's what's occurring. There is no ambiguity in the term virus. The coronavirus or COVID-19 is indisputably a virus. And indeed, the COVID-19 virus indisputably either causes or threatens to cause not only harm to health, as the exclusion says in a clear and unambiguous way, but causes or even if it causes or threatens loss of use of the property, which, of course, is precisely what the allegations are in this particular case. So ultimately, here, when we look at the complaint, we don't have direct physical loss or damage. Even if somehow it was pled, which it is not, the causation, pled, does not support direct physical loss or damage causing the loss. And the virus exclusion ultimately would come into play, even assuming if the court reached and got beyond those two arguments. If the court has no questions, I will close my comments. I think we're good. Thank you. Thank you. Your Honor? Yes. First of all, thank you for your questions. They're very important to us as well. And thank you for my esteemed colleague for his remarks. I think it basically just reflected what I reflected upon. Where we disagree is, first of all, that the precedents do not apply, especially in our case, especially at the stage where we're at, just to reflect on the causation issue again. Like it was mentioned, that in the jockey's quarters, when it occurred over there, the right applicability of the Iqbal test would have shown that there is a relation, that it was plausible. And that's what all we're looking at here. Well, what's your response to his argument that Out West rejects that argument? Yes. Your Honor, in this case here, because the pleadings are so different, I think that the emphasis should really be on the physically damaged that we have. We're not looking at the loss, what we pleaded here. We are looking at the damage that is the cause. Because what did not occur is that a fact finder looked at a physical damage. It appears in all the discussions, even in the precedent, that no physical damage occurred. We should look into that, because if an expert looks into the surfaces and everything in the premises of the attendant, of our client, there was actually a change of it. The virus was present there, like, that is undisputable even, and I thank my colleague for that, that he mentioned that, and it's not disputed anywhere. So it is basically plausible. So the physical loss and the damage actually occurred. That it affects humans as well is one thing. The other thing is just, and the pleadings, I think, and the briefing is very extensive on our side to support that, and I think that comes back to the basic that it was pleaded properly. So the complaint itself stands. And the last thing, reflecting on the exclusion, I think all the discussions that we just had reflect in the pleading as well. It is that it is just vague because of the direct physical loss that was addressed even in the pleading. So I don't want to repeat everything that has been said. I think the brief extensively gives the background, therefore, and the case law supports that, because this case is actually distinct. And to come back to the basic contention, it needs to be determined by a fact finder, not a judge, not by attorneys what physical effect actually occurred, and the court could not have made that decision. Therefore, I will close it if you have no further questions, and I thank you for your time. It's always a pleasure being in front of you, and thank you so much, your honors, and thank you, Mr. Moskowitz, for your argument. And thank you both for your argument in briefing this case. This matter is submitted.
judges: BYBEE, OWENS, COLLINS